JULIE A. MERSCH, ESQ.
Nevada Bar No. 004695
LAW OFFICE OF JULIE A. MERSCH
701 South Seventh Street
Las Vegas, Nevada 89101
(702) 387-5868
Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| PATRICIA CORBOSIERO,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>UNIVERSAL HEALTH SERVICES, INC., as Plan Administrator for the Universal Health Services, Inc. Group Supplemental Dependent Life and Accidental Death and Dismemberment Plan for employees of Universal Health Services, Inc. ("Plans"); HARTFORD LIFE INSURANCE CO., as Claims Administrator for the Plans; DOES I through X, and ROE CORPORATIONS I through X, inclusive,<br><br>　　　　　Defendants. | CASE NO.:<br><br>**COMPLAINT** |

COMES NOW Plaintiff, PATRICIA CORBOSIERO, by and through her attorney of record, Julie A. Mersch, Esq., and complains and alleges as follows:

**JURISDICTION AND VENUE**

1. This is an action for declaratory and injunctive relief and benefits owed, and arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq.

2. This Court has subject matter jurisdiction under ERISA, 29 U.S.C. § 1132(e)(1); and general federal jurisdiction pursuant to 28 U.S.C. § 1331.

3. Venue is proper in this district, pursuant to 29 U.S.C. § 1132(e)(2).

**GENERAL ALLEGATIONS**

4. At all times relevant, Plaintiff Patricia Corbosiero ("CORBOSIERO") was a qualified participant in the Universal Health Services, Inc. Group Supplemental Dependent Life and Accidental Death and Dismemberment Plan for employees of Universal Health

Services, Inc. through her employer, Universal Health Services, Inc., within the meaning of 29 USCA § 1002(7) of ERISA (hereinafter "subject plans").

5. The policy number for the subject plans is GL-034226 (group life) and ADD-S07317 (group accidental death).

6. Defendant UNIVERSAL HEALTH SERVICES, INC. ("UHS") is the Plan Administrator for the subject plans.

7. Defendant HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY ("HARTFORD") is the designated Claims Administrator of the subject plans.  HARTFORD fully insured the subject plans and performed claims handling functions for the subject plans, including the ultimate decision of whether to accept or deny life and accidental death and dismemberment claims.  Thus, HARTFORD was and is a fiduciary with respect to the subject plans as that term is defined pursuant to 29 U.S.C. § 1002(21)(A).

8. As of June 19, 2013, CORBOSIERO was a beneficiary of supplemental dependent life insurance and dependent accidental death and dismemberment insurance under coverage issued to her husband Anthony Corbosiero, through the subject plans.

9. On June 19, 2013, Anthony Corbosiero died.  As set forth in the Certificate of Death, Mr. Corbosiero's immediate cause of death was "multiple drug intoxication" contributed to by "chronic obstructive pulmonary disease."  The Medical Examiner ruled the "manner of death" as an "Accident."

10. Mr. Corbosiero's death resulted directly from an accident and was independent of all other causes.

11. On approximately August 28, 2013, CORBOSIERO made a claim for benefits under the subject plans (hereafter "life claim" and "accidental death claim").

**SPECIFIC ALLEGATIONS AS TO DEPENDENT LIFE INSURANCE CLAIM**

12. Benefits are payable, as set forth in the Certificate of Insurance for group life, as follows:

> **Life Insurance Benefit:** *When is the Life Insurance Benefit payable?*
> If You or Your Dependents die while covered under The Policy, We will pay the deceased person's Life Insurance Benefit after We receive Proof of Loss, in

accordance with the Proof of Loss provision.

The Life Insurance Benefit will be paid according to the General Provisions of The Policy.

13. On March 14, 2014, HARTFORD denied the dependent life insurance claim on the basis that Mr. Corbosiero suffered from a "Pre-Existing Condition" as defined in the policy, which caused his death.

14. As set forth in the denial letter, the HARTFORD policy limits coverage:

With respect to Dependent Life only:

Pre-existing Condition Limitation: Are benefits limited for Pre-existing Conditions? We will not pay any benefit, or any increase in benefits, under The Policy for any death that results from, or is caused or contributed to by, a Pre-existing Condition, unless Your Dependent has been continuously insured under The Policy for 12 month(s).

Letter dated March 14, 2014 from Melanie L. Salvador (Hartford) to Michael Kane, Esq. (Corbosiero) at 2.

15. This "Pre-existing Condition" exclusionary language is inconspicuous in the Certificate of Insurance provided to participants such as CORBOSIERO.

16. As set forth in the denial letter, HARTFORD determined that Mr. Corbosiero's Pre-existing Condition was "chronic low back pain" and that "the loss resulted from his use of prescription medication to treat his chronic back pain." Id. at 4. Accordingly, HARTFORD applied the Pre-existing Condition limitation to deny the dependent life insurance claim.

17. On May 9, 2014, CORBOSIERO appealed HARTFORD's denial of her dependent life claim. She argued that HARTFORD had not established that Mr. Corbosiero's death was caused by a Pre-existing Condition but his death from an "[a]ccidental drug overdose .. . was an independent cause of death [not] excluded by your policy." Letter dated May 9, 2014 from Jefferson Temple, Esq. (Corbosiero) to Claim Appeal Unit (Hartford).

18. On June 19, 2014, citing policy provisions, HARTFORD denied CORBOSIERO's dependent life claim appeal stating:

Based on Policy language, Mr. Corbosiero had a Pre-existing lower back and right great toe pain condition for which he received Medical Care from his physician, Dr. Tadlock, and that Medical Care included the above listed narcotic medications, along with benzodiazepines. Mr. Corbosiero took these medications as Treatment. The side effect of him taking this Treatment in excess of his physicians's instruction was

3

death.

Based on the information contained in the claim file, the Dependent Effective Date of Coverage for Anthony Corbosiero was March 20, 2013 and he died on June 19, 2013. Since he died during the first 12 months of coverage, the Pre-existing investigation was required, and this investigation concluded that Mr. Corbosiero treated within the 3 months prior to the effective date of his coverage and that this treatment was for the condition that later resulted, caused or contributed to him taking the medication in excess, which ultimately led to his death. Consequently, the decision to deny benefits was correct and that decision will stand.

Letter dated June 19, 2014 from Judith Rose (Hartford) to Michael Kane, Esq. (Corbosiero) at 3.

19.  The appeal denial letter advised CORBOSIERO that the decision was HARTFORD's final decision on the claim and further advised her of her right to file a federal lawsuit under ERISA.

## SPECIFIC ALLEGATIONS AS TO ACCIDENTAL DEATH CLAIM

20.  Benefits are payable, as set forth in the Certificate of Insurance, for group accidental death, as follows:

**Accidental Death and Dismemberment Benefit:**
If You or Your Dependents sustain an Injury that results in any of the following Losses, except loff of Life, within 365 days of the date of accident, We will pay the injured person's amount of Principal Sum, or a portion of such Principal Sum, as shown opposite the Loss after We receive Proof of Loss, in acccordance with the Proof of Loss provision. The loss period does not apply to Loss of Life. This Benefit will be paid according to the General Provisions fo The Policy.

21.  On March 14, 2014, HARTFORD denied the accidental death claim on the basis that "Mr. Corbosiero did not suffer an Injury as defined by the Policy" and even if he did suffer an Injury, "his loss was sustained while taking drugs in a manner not prescribed or administered by his licensed physician, which is specifically excluded from coverage under the Policy..." Letter dated March 14, 2014 from Melanie Salvador (Hartford) to Michael Kane, Esq.(Corbosiero) at 4.

22.  As cited in the denial letter, the Hartford Policy states in pertinent part:

"Injury" means bodily injury resulting:
1) directly from an accident; and
2) independently of all other causes;
which occurs while You or Your Dependents are covered under The Policy.

4

> Loss resulting from :
> 1) sickness or disease, except a pus-forming infection which occurs through an accidental wound; or
> 2) medical or surgical treatment of a sickness or disease;
> is not considered as resulting from Injury.
>
> Exclusions:
> The Policy does not cover any loss caused or contributed to by:
>
> 7) Injury sustained or contracted in consequence of being under the influence of any narcotic; unless administered on the advice of a Physician. . .

Id. at 2 (citing to portions of Hartford Policy).

23. On May 9, 2014, CORBOSIERO appealed HARTFORD's denial of the dependent accidental death claim. She argued, *inter alia*, that Mr. Corbosiero's narcotics were administered on the advice of a Physician and further, that he had no history of drug misuse or overuse to contradict the accidental nature of his death.  <u>Letter dated May 9, 2014 from Jefferson Temple, Esq. (Corbosiero) to Claim Appeal Unit (Hartford)</u>.

24. On June 20, 2014, citing policy provisions, HARTFORD denied CORBOSIERO's accidental death claim appeal on the basis that, *inter alia*, Mr. Corbosiero's death was an "injury" not independent of all other causes and also resulted from his failure to taken his narcotic medication as prescribed:

> Therefore, given the totality of the evidence made available for consideration in this claim, the information does not provide evidence of bodily injry resulting directly from accident and independent of all other causes. The information available does document both that Mr. Corbosiero's death was the consequence of medical treatment of the medical symptoms that were reported in his medical records; Loss from sickness or disease, and even if it could be said that he incurred an Injury as defined in the Policy, with which we do not agree, the records demonstrate that he did not take his narcotic medication as administrered on the advice of a physician, losses loss [sic] expressly not considered as having resulted from Injury as defined by this Policy.

<u>Letter dated June 20, 2014 from Judith Rose (Hartford) to Michael Kane, Esq. (Corbosiero)</u> at 5.

25. The appeal denial letter advised CORBOSIERO that the decision was HARTFORD's final decision on the claim and further advised her of her right to file a federal lawsuit under ERISA.

/ / / /

/ / / /

5

## FIRST CAUSE OF ACTION

**Wrongful Denial of Benefits under ERISA§502(a)(1)(B), 29 U.S.C. §1132 (A)(1)(B) against Both Defendants**

26. Paragraphs 1-25 are incorporated by reference as if fully set forth herein.

27. HARTFORD has wrongfully denied CORBOSIERO's dependent life claim for the following reasons:

    a. HARTFORD's placement of the Pre-existing Condition Limitation in the Certificate of Coverage violates ERISA because, as an exclusion to coverage, the Limitation must be prominently displayed in the Certificate so that the plan participants, such as CORBOSIERO, are alerted to the exclusion. This exclusion to coverage is inconspicuous and is therefore unenforceable. See *McClure v. Life Ins. Co. of America*, 84 F.3d 1129, 1136 (9th Cir. 1996).

    b. In order to deny benefits, HARTFORD has improperly expanded the scope of the Pre-existing Condition Limitation in order to deny claims for which the decedent's pre-existing condition itself did not cause or contribute to the death but *medical treatment* therefor, caused or contributed to the death. Mr. Corbosiero's cause of death was not due to or contributed to by chronic low back pain but due to or contributed to by an accidental overdose of medications, (as set forth in the Certificate of Death), some of which he took to alleviate his chronic low back pain.

    c. HARTFORD has the burden of proof to establish that an exclusion to coverage applies to a claim. Applying the plain language of the Pre-existing Condition Limitation, HARTFORD has not established that Mr. Corbosiero's pre-existing condition of chronic low back pain contributed to or caused his death.

28. HARTFORD has wrongfully denied CORBOSIERO's dependent accidental death claim for the following reasons:

    a. The definition of "Injury" cited in Hartford's denial letter includes an exclusion to coverage which is inconspicuous and therefore unenforceable. See *McClure*

6

   *v. Life Ins. Co. of America*, 84 F.3d 1129, 1136 (9th Cir. 1996).

  b. HARTFORD's interpretation and application of its policy provisions must be read as a whole and in conjunction with each other. By determining that Mr. Corbosiero's death was the result of medical treatment (narcotics) from a sickness and therefore not a covered Loss, it had to ignore the language of its cited Exclusion, which recognizes that an "INJURY" may result under the Policy "from being under the influence of a narcotic" but would be excluded from coverage, "unless administered on the advice of a Physician." HARTFORD defines a covered "Loss" to exclude "Injury" resulting from sickness or medical treatment therefor. At the same time, however, the Policy language allows coverage for Injury caused by narcotic use, if administered on the advice of a Physician. HARTFORD's interpretation to deny the claim renders the exception to the Exclusion (providing coverage for deaths caused by narcotics administered on the advice of a physician) meaningless and therefore in violation of ERISA rules of construction.

  c. HARTFORD's denial and appeal denial letters improperly expand the scope of the Exclusion to require CORBOSIERO to prove that her husband took his narcotic medications only as prescribed by a physician. The Policy only requires that CORBOSIERO establish that the narcotic medications were "administered on the advice of a physician", not also that they were taken "as prescribed by a physician." HARTFORD improperly conflates these phrases as having the same meaning, when they do not.

  d. Based on the foregoing erroneous policy interpretations, HARTFORD improperly determined that Mr. Corbosiero's medications were not administered on the advice of a physician and that he did not suffer an "Injury" or a covered "Loss."

29. As a result of the foregoing actions and inactions, HARTFORD has failed to pay CORBOSIERO dependent life and accidental death benefits as a result of her husband's death

1  on June 19, 2013.

## SECOND CAUSE OF ACTION

### Wrongful Failure to Provide Documentation to Plaintiff as Requested Under ERISA § 502(c)(1), 29 USC §1132(c)(1)(B) Against UHS

30. Plaintiff repeats and realleges paragraphs 1 - 29.

31. Plaintiff contends that she is entitled to relief pursuant to 29 U.S.C. § 1132 (c)(1)(B).

32. Defendant's violation began 30 days after CORBOSIERO's request for plan documents as set forth in a letter dated August 19, 2015. <u>Letter dated August 19, 2015 from Julie A. Mersch to Universal Health Services, Inc.</u>

33. In a letter dated September 9, 2015, UHS provided a "copy of the Summary Plan Description and the annual report" but did not provide the legal plan document. <u>Letter dated September 9, 2015 from UHS to Julie A. Mersch.</u>

34. In another letter dated November 25, 2015 sent to UHS, CORBOSIERO referred to language in the Summary Plan Description ("SPD") which stated in pertinent part, quoting the SPD: "Please understand that this handbook highlights the benefit plans and is for your personal education. You cannot construe it as the legal plan document. . . " <u>Letter dated November 25, 2015 from Julie A. Mersch to UHS</u>.

35. CORBOSIERO's November 25th letter continued:

> Please provide the **legal plan document** referenced above governing the terms of Mrs. Corbosiero's accidental death/dependant [sic] group life claims, as well as any "other instruments under which the plan is established or operated", including the "latest annual report, any terminal report, the bargaining agreement, trust agreement, [or] contract" as provided for in 29 U.S.C. § 1024(b)(4).

<u>Id.</u> (emphasis added).

36. On December 4, 2015, UHS responded in writing and purported to provide the "legal plan document" for the subject plans. <u>Letter dated December 4, 2015 from UHS to Julie A. Mersch</u>.

37. The documents provided by UHS in its December 4, 2015 letter are entitled

"Certificate of Insurance Hartford Life and Accident Insurance Company " and state in pertinent part:

> We have issued The Policy to the Policyholder. Our name, the Policyholder's name and The Policy Number are shown above. **The provisions of The Policy, which are important to You, are summarized in this certificate consisting of this form and any additional forms which have been made a part of this certificate.** This certificate replaces any other certificate We may have given to You earlier under The Policy. **The Policy alone is the only contract under which payment will be made. Any difference between The Policy and this certificate will be settled according to the provisions of The Policy on file with Us at Our home office. The Policy may be inspected at the office of the Policyholder.**

The Hartford Certificate of Insurance for Policy Number ADD-S07317 (accidental death plan) and The Hartford Certificate of Insurance for Policy Number GL-034226 (dependent life plan) (endorsement page for subject plans showing policyholder as "Universal Health Services, Inc.").

38. Despite two written requests, UHS has *not* provided CORBOSIERO with the Policy which comprises the "legal plan document" but only the SPDs or "Certificates of Insurance" and pursuant to *CIGNA Corp. v. Amara*, 563 U.S. 421, 436 (2011), the information about the Plan provided by SPDs."is not itself part of the plan."

39. Based on the documents provided by UHS and the United State Supreme Court's holding in *Amara* regarding the plan language, UHS has not provided the "legal plan document" in violation of ERISA.

**PRAYER FOR RELIEF**

40. CORBOSIERO respectfully requests that this court review the denial of benefits in this case and declare that she is entitled to: 1) dependent life insurance benefits; 2) dependent accidental death benefits; 3) payment of up to $110 per day for Defendant UHS's ongoing violation of 29 U.S.C. § 1132 (c)(1)(B) for its failure to provide the legal plan document, that is, the Policy; 4) an award of pre-judgment and post-judgment interest; and 3) payment of attorney's fees and costs associated with attempting to secure the benefits owed to

/ / / /

/ / / /

9

her pursuant to ERISA §502(g)(1), 29 U.S.C. §1132(g)(1) and ERISA § 502(c)(1) 29 U.S.C. § 1132 (c)(1)(B).

DATED this 13th day of April, 2016.

                            LAW OFFICE OF JULIE A. MERSCH

                            By:   /s/ Julie A. Mersch
                                   JULIE A. MERSCH, ESQ.
                                   Nevada Bar No. 004695
                                   701 S. 7th Street
                                   Las Vegas, Nevada 89101
                                   Attorney for Plaintiff

W:\CORBOSIERO\PLDGS\Complaint.wpd